UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARYL SIMON,

                Petitioner,

      – *against* –

UNITED STATES OF AMERICA,

                Respondent.

**<u>OPINION & ORDER</u>**

12 Civ. 5209 (ER)

07 Cr. 474 (ER)

<u>RAMOS, D.J.</u>:

On February 26, 2024, Daryl Simon filed a *pro se* motion for compassionate release.  Doc. 65.[1]  For the reasons set forth below, his motion is GRANTED.

## I.    BACKGROUND

The Court assumes familiarity with the underlying facts of this case, which were discussed in a prior opinion denying compassionate release.  *See generally Simon v. United States*, Nos. 12 Civ. 5209 (ER) & 07 Cr. 474 (ER), 2020 WL 5764322 (S.D.N.Y. Sept. 28, 2020) (Doc. 56).  The Court repeats the relevant details here for convenience.

On May 11, 2006, Simon was arrested following an attempt to buy electronics at a Target store in West Nyack, New York, with a fraudulent credit card.  *Id.* at *1.  When police approached him outside of the store, Simon was running a credit card writing program on his laptop and using a credit card encoding device as he sat inside his car.  *Id.* He was also in possession of four physical credit cards and a data storage device containing 3,200 other credit card numbers.  *Id.*  Following his arrest, Simon admitted that he intended to make unauthorized purchases with the credit card numbers and resell them.  *Id.*  On November 15, 2006, Simon was released on bond.  *Id.*

On September 25, 2007, Simon pleaded guilty to one count of access device fraud.  *Id.*  Shortly thereafter, in October 2007, Simon was charged with possession of

---

[1] Citations are to documents filed on the criminal docket, 07 Cr. 474.

stolen property after driving a motorcycle with a stolen license plate in the Bronx. *Id.* From October through December 2007, Simon missed scheduled appointments with his supervising pretrial services officer and the Court issued a warrant for his arrest. *Id.*

On January 3, 2008, Simon failed to appear for sentencing. *Id.* His sentencing was rescheduled for January 17, 2008, but, when he again failed to appear, he was declared a fugitive. *Id.* On March 25, 2008, a grand jury indicted Simon with failure to appear. *Id.*

On May 14, 2008, agents went to a basement apartment in the Bronx where they believed Simon resided and found evidence of an additional credit card scheme, including a credit card skimming and encoding device, a credit card embossing machine, high-resolution and thermal dye printers, a scanner, a box of white plastic used to make credit cards and identification cards, computers, hard drives, CDs, DVDs, cellphones, and a large sum of counterfeit United States currency.[2] *Id.* One of the computers contained 1,479 credit card numbers and corresponding personal information of the cardholders, as well as images of fake identification cards, credit card skimming devices, and guns. *Id.* Simon, however, was not in the apartment. *Id.* Simon was finally rearrested on October 1, 2008, when agents located him at a friend's apartment in Astoria, Queens. *Id.*

On January 13, 2010, Simon pleaded guilty to one count of failure to appear and another count of access device fraud. *Id.* On July 15, 2010, Judge Stephen C. Robinson sentenced Simon to 285 months of incarceration and three years of post-release supervision. *Id.* Judge Robinson also ordered Simon to pay $243,164.66 in restitution. *Id.*

On August 19, 2020, Simon filed his first motion for compassionate release. Doc. 53. Simon cited the COVID-19 pandemic as the extraordinary and compelling circumstances warranting a reduction of his sentence. *Id.* The Court denied the motion.

---

[2] The agents also found a gun silencer, which Simon claimed was actually a prop for his entertainment shows and was not charged. *Simon*, 2020 WL 5764322, at *1 n.3.

*Simon*, 2020 WL 5764322, at *3–4. The Court highlighted both the seriousness of Simon's offense and the 100 months remaining in his custodial sentence, finding that the sentence was commensurate with his misconduct. *Id.* at *3. The Court also denied Simon's motion for reconsideration. *Simon v. United States*, Nos. 12 Civ. 5209 (ER) & 07 Cr. 474 (ER), 2021 WL 242360, at *3 (S.D.N.Y. Jan. 25, 2021) (Doc. 58).

Simon has been in custody since October 1, 2008, and is currently incarcerated at Federal Correctional Institution Allenwood Low. Doc. 65 at 1–2. He is fifty-two years old. *Id.* at 64. According to Simon, as of February 2024, he had been incarcerated for 182 months, and earned an additional 765 days of good time credit. *Id.* at 25. According to the Bureau of Prisons, Simon has an anticipated release date of March 18, 2028.[3] Simon notes that with his additional 535 days of First Step Act credits, he would be eligible for home confinement or transfer to a halfway house as early as 2026. *Id.* The government does not dispute Simon's averment of his remaining custodial time.

Simon now seeks compassionate release for the second time pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. Doc. 65. First, Simon asserts that his mother requires his aid as a caregiver due to her poor health. *Id.* at 4. According to Simon, his mother suffers from forgetfulness, chronic arthritis, poor eyesight, and grief from the loss of her husband—Simon's stepfather—in 2023. *Id.* at 4–8. Accordingly, Simon's mother requires physical assistance and memory care and, following the death of Simon's stepfather, she has no other family in-state. *Id.* Simon provides a letter from his mother, where she confirms that she is now living alone and in need of care. *See id.* at 36. Second, Simon argues that changes to the sentencing guidelines weigh in favor of a sentence reduction. *Id.* at 8–11. Simon relies on Amendment 792 to the guidelines, which modified enhancement levels based on victim harm. *Id.* According to Simon, if he were sentenced under the changes set forth in Amendment 792, the guideline range for

---

[3] *Find an Inmate*, Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited August 5, 2024).

his conduct would be just 120 to 150 months. *Id.* at 10. While the government argues that Amendment 792 is not retroactive and thus does not provide Simon relief, it does not dispute his calculation. *See* Doc. 70 at 8. Third, Simon details his rehabilitative efforts and argues that they warrant a sentence reduction. Doc. 65 at 12–18. In a letter addressed to the Court that he attached to the motion, Simon expresses remorse for his misconduct, and reflects on the consequences of his actions. *Id.* at 33–34. Simon also mentions that he completed treatment and vocational training programs and has mentored other individuals who are incarcerated. *Id.* at 12–18. He provides the Court with letters of reference from some of those individuals, generally attesting to Simon's positive character and nature. *See id.* at 45–63. Simon also provides a letter from the owner of a security company who attests that he is willing to employ Simon upon release from custody. *See id.* at 44. Finally, Simon argues that recent prison conditions in light of the COVID-19 pandemic render his sentence more severe than originally anticipated. *Id.* at 18–21. Specifically, Simon cites the suspension of visitation and educational programs, as well as his own COVID-19 infection in January 2022. *Id.*

On July 7, 2023, Simon sent a message to Warden R. Thompson requesting compassionate release in light of his mother's health. *Id.* at 35. Simon's request was denied that same day. *Id.* Subsequently, on February 26, 2024, Simon filed the instant motion for compassionate release. Doc. 65. The government responded on April 4, 2024, opposing the request. Doc. 70.

## II.    LEGAL STANDARD

"Pursuant to 18 U.S.C. § 3582(c)(1) as modified by the First Step Act, a district court may reduce a term of imprisonment upon motion by a defendant." *United States v. Fernandez*, 104 F.4th 420, 426 (2d Cir. 2024) (quoting *United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022)). The compassionate release analysis is a two-step process: "the district judge first determines whether extraordinary and compelling reasons exist to modify the sentence, and if such reasons exist, the court then considers the Section

3553(a) factors in evaluating what reduction, if any, is appropriate." *United States v. Griffin*, No. 22 Cr. 408 (EK), 2024 WL 2891686, at *1 (E.D.N.Y. June 10, 2024). "District courts may 'consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them.'" *Fernandez*, 104 F.4th at 426 (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

A sentence reduction under 18 U.S.C. § 3582(c)(1) must also be "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Stokes*, No. 19 Cr. 307 (SRU), 2024 WL 216643, at *1 (D. Conn. Jan. 19, 2024). "The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines [] § 1B1.13 and Commentary," as amended and effective November 1, 2023. *Id.* at *2. This update was "meant to accord with the First Step Act's purpose of increasing the use of sentence reduction motions under section 3582(c)(1)(A)." *United States v. Donato*, No. 03 Cr. 929 (NGG), 2024 WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024) (internal quotation marks and citation omitted).

The policy statement provides examples of what may establish an extraordinary and compelling reason: "(1) a defendant's medical circumstances; (2) a defendant's age; (3) a defendant's family circumstances; and (4) abuse suffered by the defendant while in custody." *Id.* (internal citations omitted). The policy statement "also includes a catch-all provision authorizing the court to consider 'Other Reasons' that demonstrate extraordinary and compelling reasons warranting a reduction in sentence," where those other reasons are "similar in gravity" to the examples provided. *Id.* Thus, the policy statement "affords the court significant discretion to determine when a reduction in sentence is warranted." *Id.*

A court may make such a sentence modification only:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

> the receipt of such a request by the warden of the defendant's facil-
> ity, whichever is earlier . . . .

*United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (emphasis omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Finally, *pro se* submissions such as Simon's "are reviewed with 'special solicitude' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

## III.   DISCUSSION

### A.  Administrative Exhaustion

As a threshold matter, the government does not dispute that Simon has pursued— and been denied—relief through the proper administrative channels. *See* Doc. 65 at 35. Simon's request was submitted and denied on July 7, 2023. *Id.*

The government nonetheless argues that Simon has failed to exhaust his administrative remedies concerning a number of his arguments. Doc. 70 at 7. Specifically, as a reason for compassionate release in his request to the Bureau of Prisons, Simon raised only his mother's health, and in the instant action he also relies on his rehabilitation, changes in the sentencing guidelines, and prison conditions over the last few years. *Id.* The government asks the Court to ignore arguments not already raised in Simon's request to the Bureau of Prisons, calling them "unripe." *Id.* at 7–8.

The Court disagrees. As it stands, several courts in this District have concluded that the compassionate release statutory scheme does not require litigants to raise every argument that may support compassionate release with the Bureau of Prisons. *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 657 (S.D.N.Y. 2020) ("[T]he nature of the [Bureau of Prisons'] compassionate-release process confirms that . . . a judicially created issue-exhaustion requirement is inappropriate." (internal quotation marks and citation omitted)); *United States v. Salemo*, No. 11 Cr. 65 (JSR), 2021 WL 4060354, at *3

(S.D.N.Y. Sept. 7, 2021) ("[A] defendant may raise new issues in a motion for sentence modification so long as he has applied to [the Bureau of Prisons] and either exhausted his administrative appeals of [the Bureau's] denial of that application or waited for 30 days."); *United States v. Delgado*, 582 F. Supp. 3d 136, 140 (S.D.N.Y. 2022) ("The Court thus declines to impose a judicially created issue exhaustion requirement in [the sentence reduction] context."); *United States v. Gunn*, No. 06 Cr. 911 (AKH), 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022) ("[T]he compassionate release statute does not require that specific arguments or claims be raised." (internal quotation marks and citation omitted)); *United States v. Herrera*, No. 17 Cr. 415 (PAC), 2023 WL 3614343, at *4 (S.D.N.Y. May 24, 2023) ("[Section] 3582(c)(1)(A) does not demand issue exhaustion."). The Court notes that "[t]here is disagreement among judges in this district as to whether section 3582(c)(1)(A) requires issue exhaustion." *Delgado*, 582 F. Supp. 3d at 139. Absent guidance from the Second Circuit, this Court "joins the majority of district courts that have addressed issue exhaustion and concludes that it is not required." *Id.* The Court "may thus consider the full merits" of Simon's motion since he made a request to the Bureau of Prisons and was denied. *Torres*, 464 F. Supp. 3d at 657.

Moreover, while Simon's request to the Bureau of Prisons did not mention every ground upon which he now seeks a reduction in his sentence, he did raise his mother's health, which forms the central basis for his request here. *See* Doc. 65 at 35. Even to the extent section 3582(c)(1)(A) requires issue exhaustion, Simon's "exhaustion of central issues forming the basis of [his] request satisfies section 3582(c)(1)(A)'s requirement in this case." *United States v. Batista*, No. 18 Cr. 319 (LTS), 2022 WL 1997173, at *1 n.2 (S.D.N.Y. June 6, 2022).

### B. Extraordinary and Compelling Circumstances

Simon asserts that his need to provide care for his ailing mother presents an extraordinary and compelling reason warranting early release. Doc. 65 at 4. The

government argues that his mother is not sufficiently incapacitated as to warrant a sentence reduction.  Doc. 70 at 7–8.

Simon's mother requires both physical assistance and memory care on account of increasing forgetfulness and chronic arthritis.  Doc. 65 at 4–7.  While the government asserts that Simon's mother has "no diagnosis," Doc. 70 at 8, it does not otherwise dispute the veracity of Simon's characterization of his mother's health or the letter from Simon's mother provided with his brief.  The government claims that Simon's mother is not "incapacitated beyond what is to be expected of an adult in her early 80's."  *Id.* Insofar as that may be true, the government provides no authority for the proposition that the Court should weigh a family member's incapacitation any less because it is expected for their age.  Concluding otherwise would effectively undermine the intention behind the Sentencing Commission's most recent policy update:  "to accord with the First Step Act's purpose of *increasing* the use of sentence reduction motions under section 3582(c)(1)(A)."  *Donato*, 2024 WL 665939, at *3 (emphasis added) (internal quotation marks and citation omitted).

The Government also contests whether Simon is the only available caregiver for his mother, asserting that there is "no evidence" provided.  Doc. 70 at 8.  Yet, Simon explains in his opening brief that his stepfather recently passed away, and his mother has no other family living in Florida.  Doc. 65 at 4.  In her letter, Simon's mother confirms that she is now "living alone" and in need of care.  *Id.* at 36.

Moreover, Simon's rehabilitation "in combination" with his family circumstances supports a reduction of his sentence.  *Stokes*, 2024 WL 216643, at *3.  Simon acknowledges the errors of his past and the consequences of his misconduct.  *See* Doc. 65 at 33–34.  Simon has also completed a number of vocational and treatment programs, *id.* at 12–18, and according to letters provided by a number of other inmates, he has been a positive force during his incarceration, *see id.* at 45–63.  One letter describes the magic shows that Simon puts on, where, in lieu of tips, Simon asks other inmates to donate

toward packages he prepares for new inmates. *See id.* at 45. Another letter describes Simon as someone who "will give you the shirt off his back," and adds that Simon helps others plan for their release. *Id.* at 48. While rehabilitation may not alone provide an extraordinary and compelling reason for early release, it does support such a finding in concert with Simon's family situation. *See Stokes*, 2024 WL 216643, at *3.

Accordingly, the Court finds that Simon has sufficiently established extraordinary and compelling circumstances to justify a reduction of his sentence.[4]

### C. Section 3553(a) Factors

"[A] sentence reduction must also be consistent with the section 3553(a) factors." *United States v. Herbert*, No. 03 Cr. 211 (SHS), 2024 WL 1931962, at *2 (S.D.N.Y. May 2, 2024). Those factors include:

> the nature and circumstances of the offense; the history and characteristics of the defendant, including age, being a non-violent offender, and remorse; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the affordance of adequate deterrence; and the protection of the public from further crimes of the defendant.

*Id.* (citing 18 U.S.C. § 3553(a)).

Here, the underlying offense was serious. However, Simon has been incarcerated for over 182 months, which, accounting for an additional 765 days (over 25 months) of good time credit, is over 70% of his 285-month sentence. Doc. 65 at 25; *see Herbert*, 2024 WL 1931962, at *2 (granting compassionate release where defendant had served over 75% of his sentence when accounting for good time credit). The Court acknowledges that in 2020 it denied Simon's request for compassionate release, noting in part the significant time remaining in his sentence. *See Simon*, 2020 WL 5764322, at *3. Now, years later, Simon has far less custodial time left, and has served more of his

---

[4] Simon also asserts that changes to the sentencing guidelines as well as prison conditions during the COVID-19 pandemic support a reduction of his sentence. Doc. 65 at 8–11, 18–21. Since the Court finds that he has otherwise established extraordinary and compelling circumstances, it "does not reach" his other arguments. *See United States v. Lopez*, No. 09 Cr. 332 (JBG), 2023 WL 2139205, at *4 n.2 (N.D. Ill. Feb. 21, 2023).

allotted sentence. "This significant term of incarceration amply reflects the seriousness of his offense, provides just punishment, promotes respect for the law, and affords adequate deterrence." *Herbert*, 2024 WL 1931962, at *2; *see also United States v. Resto*, No. 08 Cr. 757 (DC), 2021 WL 1109467, at *3 (S.D.N.Y. Mar. 23, 2021) ("[C]ourts have found that compassionate release for defendants who have served the significant majority, at least two-thirds, of their sentences does not undermine sentencing goals.").

Moreover, Simon will still serve a period of supervised release. *See Stokes*, 2024 WL 216643, at *3 (highlighting the defendant's remaining supervised release period in finding that the sentence reduction "will not undermine the need to provide just punishment, to protect the public from further crimes, to adequately deter criminal conduct, and to provide [the defendant] with opportunities for rehabilitation").

Accordingly, having considered the relevant statutory factors, the Court concludes that compassionate release is warranted.

### D. Policy Statement

Compassionate release here is also consistent with the applicable policy statement issued by the U.S. Sentencing Commission. "The relevant policy statement requires the Court to determine that '[t]he defendant is not a danger to the safety of any other person or to the community' in order to grant release." *Herbert*, 2024 WL 1931962, at *3 (alteration in original) (quoting U.S.S.G. § 1B1.13(a)(2)). Simon's age of fifty-two, record in prison, and non-violent conviction suggest that "there is little concern about danger to the public upon his release from incarceration." *See id.* (granting compassionate release for a fifty-year-old non-violent defendant).

## IV.    CONCLUSION

For the foregoing reasons, Simon's motion for compassionate release is GRANTED and his term of imprisonment is reduced to time served.  All other provisions of Simon's original sentence remain unchanged.

This order is STAYED for fifteen days for the establishment of a release plan and to make appropriate travel arrangements.[5]  If more than fifteen days are needed to make the appropriate arrangements, the parties shall notify the Court.

The Clerk of Court is respectfully directed to terminate the motions, Doc. 65 in No. 07 Cr. 474, and Doc. 61 in No. 12 Civ. 5209.  The Clerk of Court is also respectfully directed to mail a copy of this opinion to Simon.

It is SO ORDERED.

Dated:    August 5, 2024
        New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.

---

[5] *See United States v. Monteleone*, No. 92 Cr. 351 (ARR), 2023 WL 2857559, at *6 (E.D.N.Y. Apr. 10, 2023).